FERGUSON, Circuit Judge,
dissenting:
I respectfully dissent.
*516 Counsel for the creditor Mr. Oyama failed to effectuate timely service under Federal Rule of Civil Procedure 4(m). His explanation was that “secretaries are often the ones who follow the rules or are supposed to follow the rules for service” and the “serious illness by the sole secretary and extended trial appearances and trial scheduling by both lawyers in the office” caused the error. On appeal, counsel asks this Court to find that the bankruptcy court abused its discretion when it dismissed his complaint due to ineffective service.
The Bankruptcy Court, the Ninth Circuit Bankruptcy Appellate Panel, and the majority opinion of this Court properly found that under the good cause standard of Rule 4(m) “the facts in this case clearly do not mandate the exercise of discretion to extend the service period under Rule 4(m).” (Majority op. at 7757). However, the majority opinion does not stop at ruling on the issue before this Court. Instead, the majority goes on to find that Federal Rule of Bankruptcy 9006(b)’s excusable neglect standard applies to this case. This issue is not properly before this Court because counsel for the creditor never made the required motion to invoke Rule 9006(b) and this Court should not consider an issue not decided upon by the lower court. Moreover, I do not believe that counsel’s conduct rises to the level of excusable neglect.
I. Failure to Make a Motion
The majority finds that the bankruptcy judge recognized a Rule 9006(b) motion and denied it on its merits. This is baffling. There was no written motion presented to the court as required by the local bankruptcy rules. Nowhere in the briefs to the bankruptcy court or during oral argument was the term 9006(b) used. In fact, it was not until oral argument before the bankruptcy judge that the term excusable neglect was even mentioned. At that time, the bankruptcy judge admonished counsel that “it is improper to argue anything that’s not in your papers” and then went on to say that she did not think the excusable neglect standard applied to good cause and she was not going to consider it.
Courts strictly adhere to the requirement that a motion be made to invoke a rule. There are numerous examples where failure to make a motion has denied a party the ability to pursue a particular course of action. See e.g., Cone v. W. Va. Pulp & Paper Co., 330 U.S. 212, 217, 67 S.Ct. 752, 91 L.Ed. 849 (1947) (holding that the absence of a motion for judgment notwithstanding the verdict left the appellate court without power to require the district court to reverse its decision); Saman v. Robbins, 173 F.3d 1150, 1154 (9th Cir.1999) (finding that failure to make a timely motion under Federal Rule of Civil Procedure 50(b) caused plaintiffs sufficiency of evidence arguments to be waived on appeal); Phoenix Eng’g & Supply Inc. v. Universal Elec. Co., Inc., 104 F.3d 1137, 1140 (9th Cir.1997) (ruling that appellant could not challenge the specificity of the court’s findings where appellant failed to make a motion for more specific or additional findings); and Fortune, Alsweet & Eldridge, Inc. v. Daniel, 724 F.2d 1355, 1356 (9th Cir.1983) (finding that failure to make a motion to vacate the entry of an arbitration award within the statutory time limit barred assertion of defenses to the petition to confirm the award). It is unfortunate if a client is made to suffer the consequences of his attorney’s procedural error, but, as the Supreme Court has stated, “clients must be held accountable for the acts and omissions of their attorneys.” Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P’ship, 507 U.S. 380, 396, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).
*517 Counsel does not even argue that he made the required Rule 9006(b) motion. He explains in his brief to this Court that his reason for not making a Rule 9006(b) motion was that if he successfully opposed the motion to dismiss for lack of proper service, the result would be the same as if the Rule 9006(b) motion was made.
Unfortunately for counsel, he did not successfully defend against the motion to dismiss in bankruptcy court. He compounded his failure to properly serve the debtor with a poor choice of legal tactics when he consciously chose not to make a 9006(b) motion. This Circuit’s general rule is that “courts are admonished not to ‘second-guess’ trial strategy.” United States v. Appoloney, 761 F.2d 520, 525 (9th Cir.1985) (citations omitted). Courts “must defer to counsel’s strategic decisions and view the situation from counsel’s perspective. A decision not to put forth a defense may be a conscious strategic option.” Id. (citations omitted).
The majority, however, would like to rescue counsel from his tactical infirmity by finding that the motion requirement of Rule 9006(b) was “narrowly satisfied.” In order to accomplish this feat, the majority appears to construct a Rule 9006(b) motion from counsel’s attempt to persuade the bankruptcy judge that the excusable neglect standard can be used to interpret good cause under Rule 4(m). During oral argument before the bankruptcy judge, counsel stated, “I will agree with [opposing counsel] that under the amended rule [4(m) ], it’s a two-pronged test, or a two-part test; where first the Court determines good cause, and if there is [not][11] good cause, must deny the motion. If not, the Court has discretion.” Immediately after this statement, he refers the court to the excusable neglect discussion in Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P’ship, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), and says he mentions it for the factors the court should look at when deciding whether to use its discretion to extend the time for service. The entire context of this discussion pertains to the application of the excusable neglect standard to an interpretation of Rule 4(m)’s good cause standard. An analogy to another standard does not rise to the level of a motion. The majority seeks to create a legal fiction by “narrowly” finding a motion was made. I cannot in good conscious agree with this approach.
The bankruptcy judge did not make a ruling on a Rule 9006(b) motion. Instead, she acted appropriately by not substituting the excusable neglect standard of Rule 9006(b) for the good cause standard of Rule 4(m). If the bankruptcy judge were to apply the standard from Rule 9006(b), which was not properly before the court, she would re-write Rule 4(m)’s standard. Re-writing law is not the function of the judiciary. See Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 430, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Black, J., dissenting) (“[I]t seems to me to be a matter of common understanding that the business of the judiciary is to interpret the laws and not to make them”).
II. Appellate Review
Generally, “a federal appellate court does not consider an issue not passed upon below.” Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). There are exceptions to this rule, such as if “injustice might otherwise result,” Hormel *518 v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); there is no doubt as to how the matter should be resolved, Turner v. City of Memphis, Tennessee, 369 U.S. 350, 353, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962); or a conflict in law was created by a recent court decision, Cristobal v. Siegel, 26 F.3d 1488, 1493 (9th Cir.1994). If an exception is to be crafted, the underlying consideration the court must keep in mind is whether both parties had the opportunity to present all of the evidence relevant to the issue so that the “litigants may not be surprised on appeal by final decision[s] ... of issues upon which they have had no opportunity to introduce evidence.” Hormel, 312 U.S. at 556, 61 S.Ct. 719.
An exception to the general rule is not warranted in this case. Allowing counsel to proceed as if he made a Rule 9006(b) motion would be manifestly unjust to the debtor. See Singleton, 428 U.S. at 121, 96 S.Ct. 2868 (finding that injustice was more likely to occur if the issue was decided without the petitioner having the opportunity to be heard at the trial level). Counsel for the debtor did not receive fair notice of the excusable neglect argument because it was not in the creditor’s brief. This was a surprise attack that the debt- or’s counsel had no opportunity to defend against and runs afoul of the guidance provided by the Supreme Court that the parties should have the opportunity to offer evidence on issues. Hormel, 312 U.S. at 556, 61 S.Ct. 719.
This is not a case where a single, justifiable error occurred and the court should be inclined to use its equitable powers to create an exception. Rather, this is a case that was riddled with error. Not once, but three times, counsel failed to properly serve the debtor. Then he compounded his error by not making a motion to extend the time for service. Counsel’s disregarded established rules of procedure designed to provide a fair system of justice and then used his seriously ill secretary as an excuse. He had four bites at the apple and failed on each attempt.
Disregarding such behavior to create an exception to established rules results in judicial anarchy, especially in bankruptcy claims, which require efficient procedures that do not unduly delay the ability of the debtor to make a fresh start. Therefore, courts should not lightly set aside decisions that effect the “expeditious administration” necessary in bankruptcy law. In re Berger, 27 B.R. 201, 204 (Bankr.D.Or.1982).
The bankruptcy judge understood this policy when she rendered her decision. She stated that “[fit’s a matter of public policy that it is not in people’s best interest to have their financial circumstances hanging, with some threat, in limbo for a long period of time.” She also explained how due process was essential to bankruptcy proceedings and that the Central District of California was pro-active in ensuring the proceeds were fair and uniform:
[T]he judges of the Central District of California, along with the bar, have been actively engaged in a process over the last 15 years to promulgate rules that will assist attorneys to make sure that they understand how to get their papers properly before the parties ...
We are a huge district ... And in the bankruptcy court we have 21 courts, and therefore 21 judges. And to try to ameliorate any problem with respect to individual judges having preferences, and wanting and requiring things that were not announced generally in any one place, the judges have worked very hard.
[WJith cooperation of the bar, [we] ... make sure that we nave procedural rules that are open and available for everyone. So that no one should be taken by surprise, and therefore a lose valuable right *519 because of some procedural impediment. ...
[T]he bankruptcy code is a very notice-intensive statute and practice. Because the very nature of bankruptcy is such that every single case has tens or hundred of parties in interest. Because once a debtor files, there are numerous creditors whose rights are about to be modified, or in fact, eliminated perhaps, in a bankruptcy proceeding. And you can’t do that without due process of the law.
Constructively creating a Rule 9006(b) motion in order for this Court to hear an argument whittles away at the procedures so carefully put in place by the district court. It creates an additional exception to the service requirement of Rule 4(m), which already allows exceptions for good cause and judicial discretion. This is not how bankruptcy rules should operate.
The law, however, is not so rigid as to never allow exceptions, and that is why standards such as excusable neglect and good cause exist. Exceptions, though, are reserved for extreme cases. Counsel’s mistake is not such a case. He knew that his secretary was seriously ill and should have realized that there was a very good chance that she would be in and out of the office. When service did fail, counsel made a conscious choice not to make a motion to extend the time for service. This case does not warrant an exception to the general rule, not only because of basic procedural reasons, but because as a matter of public policy it is not the type of behavior this Court should allow, much less promote.
III. Excusable Neglect is not Present
Even under an excusable neglect standard, the creditor still should not prevail. The Pioneer decision supports the position that counsel’s situation does not rise to the level of excusable neglect. 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74. In Pioneer, the attorney failed to file proofs of claim by the specified date. His excuse was that he was unaware of the date because “he was experiencing ‘a major and significant disruption’ in his professional life caused by his withdrawal from his former law firm ... and did not have access to his copy of the case file.” Id. at 384, 113 S.Ct. 1489. Applying the excusable neglect factors, the Supreme Court ultimately allowed the attorney’s request for relief, not because of his excuse, but because “the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases.” Id. at 398, 113 S.Ct. 1489. The Supreme Court gave “little weight to the fact that counsel was experiencing upheaval in his law practice.” Id. The Court acknowledged that no prejudice existed and that neither party acted in bad faith. "Ultimately, the overriding reason for finding excusable neglect was the unusual circumstance in the bar date, not the attorney’s reason for the delay, or whether prejudice or bad faith were present.
In contrast, there are no unusual circumstances to explain why counsel failed three times to effectuate proper service. Service of a summons is an event that occurs in the ordinary course of bankruptcy proceedings. Excusable neglect may be a flexible standard, but “inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute ‘excusable’ neglect.” Id. at 392, 113 S.Ct. 1489. Thus, counsel’s failure to follow basic rules of procedure does not rise to the level of excusable neglect.
Although there is no case law in this Circuit using excusable neglect to determine an extension of time under 4(m), other cases applying an excusable neglect standard can provide guidance. In Kyle v. Campbell Soup Co., 28 F.3d 928 (9th Cir.1994), the court found that an attorney’s *520 mistake of law in interpreting the tune to file a post-trial motion did not constitute excusable neglect under Federal Rule of Civil Procedure 6(b). Likewise, in Townsel v. County of Contra Costa, 820 F.2d 319 (9th Cir.1987), ignorance of the time of service under Rule 4(j) — the predecessor to 4(m) — was not excusable neglect. The court in Familian Northwest, Inc. v. RG & B Contractors, Inc., 21 F.3d 952 (9th Cir.1994), held that the inadvertent omission of invoices from a claim due to corporate restructuring was not excusable neglect because the corporation was aware of the restructuring and the problems it could cause. As with these examples, counsel’s failure to perform one of the most fundamental acts to commence an action, service of process, does not rise to the level of excusable neglect.
IV. Conclusion
The noble profession of lawyering has degenerated to the point where there is extreme public criticism of its practices. “The public’s lack of trust and confidence in both attorneys and the judicial system has created an overall discontent with the legal profession. In fact, in recent years, the legal profession’s reputation has spiraled downward.” Lisa M. Stern, Code of Professional Responsibility, 70 St. John’s L.Rev. 839, 839 (1996). This deterioration will continue as long as the judiciary permits it. Allowing an attorney to hide behind the serious illness of his secretary and excusing procedural errors simply because of a busy schedule can only further undermine the dignity of the profession. I must dissent.

. The record reads "if there is good cause, must deny the motion.” Because this is in opposition to the creditor's position I assume he meant if there was not good cause the court must deny the motion.